**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2098
_____

VICENTE FRANCISCO SORTO,
Petitioner

v.

ATTORNEY GENERAL
UNITED STATES OF AMERICA
_____

On Petition for Review of a
Decision of the Board of Immigration Appeals
(A095-060-404)
Immigration Judge: Mirlande Tadal
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 3, 2022
_____

Before: GREENAWAY, JR., PORTER, and PHIPPS, *Circuit Judges*.

(Filed: July 11, 2022)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**PHIPPS**, *Circuit Judge*.

Vicente Sorto, a native and citizen of El Salvador, who experienced violence from gangs in that country, entered the United States illegally, and while here, he pleaded guilty to aggravated assault under New Jersey law. That conviction prompted removal proceedings, and Sorto did not contest his removability. Rather, he sought several forms of relief from removal, and the Immigration Judge ruled against him on each. Sorto administratively appealed, and the Board of Immigration Appeals issued a final order for his removal. He timely petitioned this Court for review of that order, *see* 8 U.S.C. § 1252(b)(1), (4), and for the reasons below, we will deny the petition.

### BACKGROUND

By his account, Sorto had three hostile encounters with MS-13 gang members in El Salvador in the 1990s. In February 1993, members of that gang kidnapped, detained, and threatened him, releasing him only after he agreed to pay a lump sum of 10,000 pesos and bi-weekly payments of 2,500 pesos. He paid that sum for over five years until he experienced financial hardship in April 1998. But in November 1998, a gang member noticed Sorto celebrating with coworkers in a restaurant, and that gang member questioned Sorto's ability to celebrate at a restaurant in light of his professed financial hardship. After that exchange, the gang member left and returned with about a dozen gang members. A confrontation ensued, and Sorto was shot in the head as he tried to disarm one of the gang members. He received stitches for that wound and fled to Honduras. Two weeks later, out of concern for his wife and child, Sorto returned to El Salvador. The same gang members were looking for him, and when they found him at a

2

taxi station, it got violent. The gang boss shot one of Sorto's friends, and another of Sorto's friends fatally stabbed the gang boss. Sorto fought against a different gang member and suffered minor injuries. Afterwards, Sorto took a taxi to Honduras and never returned to El Salvador. The gang later threatened members of Sorto's family and killed Sorto's friends who participated in the fight.

In July 1999, Sorto entered the United States without inspection or parole. Two years later, Sorto's wife and their children joined him in the United States, and they have lived here ever since. While in the United States, Sorto had a child with another woman, and in May 2008, he was arrested and charged with sexually assaulting her by using force or coercion while in the presence of their minor child. In 2009, Sorto pleaded guilty to (and was convicted of) a lesser offense: aggravated assault under N.J. Stat. Ann. § 2C:12-1(b)(7). As part of the plea agreement, all other offenses charged in the indictment – including those alleging criminal acts committed in the presence of his minor child – were dismissed. Sorto's sentence was for time served, which was 243 days, two years' probation, and a $155 fine.

It took several years, but in 2014, the Department of Homeland Security charged Sorto as removable. It did so on the grounds that his conviction was for a crime of moral turpitude, *see* 8 U.S.C. § 1182(a)(2)(A)(i)(I), and that he was inadmissible, *see id.* § 1182(a)(6)(A)(i). Sorto did not contest his removability, but after a series of continuances, in May 2019, he applied for several forms of relief from removal: asylum, statutory withholding of removal, as well as withholding of removal and deferral of removal under the Convention Against Torture.

3

To support those forms of relief, Sorto offered his testimony about his experiences with the MS-13 gang in the 1990s (recounted above) as well as additional hearsay statements of later events. In an affidavit, Sorto swore that in 2015 or 2016, an unknown resident of his hometown in El Salvador sent him a friend request on Facebook and later messaged him that "this hasn't ended, they still ask about you. Don't come back." Sorto Aff. ¶ 24 (May 7, 2019) (AR337). Sorto also testified that while he was detained, he asked a friend for help getting his birth certificate. That friend told another person that Sorto was detained, and Sorto then heard that MS-13 gang members were asking questions about his whereabouts.

On that record, the Immigration Judge denied Sorto relief from removal. The Immigration Judge determined that Sorto's request for asylum was untimely. *See* 8 U.S.C. § 1158(a)(2)(B). The Immigration Judge also rejected Sorto's requests for withholding of removal (under the Immigration and Nationality Act and the CAT) because his aggravated-assault conviction constituted a particularly serious crime. *See* 8 U.S.C. § 1231(b)(3)(B)(ii) (preventing statutory withholding of removal for aliens convicted of particularly serious crimes); 8 C.F.R. § 1208.16(c)(4), (d)(2) (2019) (barring an alien convicted of a particularly serious crime from CAT withholding of removal); *Grijalva Martinez v. Att'y Gen.*, 978 F.3d 860, 870 (3d Cir. 2020). And the Immigration Judge denied Sorto's request for CAT deferral because he had not shown the requisite likelihood of torture upon return to El Salvador.

Sorto administratively appealed that order. He did not contest the denial of his asylum request on timeliness grounds. Rather, he disputed two other determinations of

4

the Immigration Judge. First, he challenged the conclusion that he had committed a particularly serious crime, which was the basis for denying his requests for statutory and CAT withholding of removal. Second, he disputed the Immigration Judge's assessment that he would not likely experience torture upon return to El Salvador, which was the basis for denying CAT deferral of removal. The BIA affirmed the Immigration Judge's decision in both respects. Sorto timely petitioned this Court for review of that final order of removal, *see* 8 U.S.C. § 1252(b)(1), (4), raising those same two challenges. Neither succeeds.

**DISCUSSION**

## I. Sorto's Challenge to the Denial of Statutory and CAT Withholding

The agency's denial of withholding of removal rested solely on its conclusion that Sorto's conviction constituted a particularly serious crime. Sorto now attacks the agency's particularly-serious-crime determination by arguing that the agency, in using an otherwise permissible case-specific analysis, *see Luziga v. Att'y Gen.*, 937 F.3d 244, 252–53 (3d Cir. 2019), incorrectly considered a portion of the indictment that was later dismissed.[1] But if the elements of a crime "potentially bring the offense within the ambit of a particularly serious crime," as is undisputed here, then the agency may consider "all reliable information." *In re N-A-M-*, 24 I. & N. Dec. 336, 342 (B.I.A. 2007). The

---

[1] This challenge does not implicate the criminal-alien bar, *see* 8 U.S.C. § 1252(a)(2)(C)–(D), for two reasons. First, Sorto disputes the agency's decision as a matter of law (whether a dismissed portion of an indictment may be considered in evaluating an offense as a particularly serious crime). Second, the criminal-alien bar does not apply to his requests for CAT relief. *See Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020). Sorto's legal challenge receives *de novo* review. *See Luziga*, 937 F.3d at 252 n.9.

5

universe of "*all* reliable information" is broad and includes "the conviction records and sentencing information, as well as other information outside the confines of a record of conviction." *Id.* (emphasis added); *see also Luziga*, 937 F.3d at 253. As a benchmark, this Court has determined that "an affidavit of probable cause" is sufficiently reliable under that standard. *See Sunuwar v. Att'y Gen.*, 989 F.3d 239, 249–50 (3d Cir. 2021) (citation omitted). And an indictment issued by a grand jury is at least as reliable as a witness's affidavit. *See United States v. Calandra*, 414 U.S. 338, 343 (1974) (explaining that the grand jury indicts only when it determines that "there is probable cause to believe a crime has been committed"). Nor does the dismissal of an indictment due to a plea bargain – as occurred in Sorto's case – undermine the reliability of the dismissed portion: it still represents a finding of the grand jury. Thus, the agency did not commit legal error in relying on a dismissed portion of an indictment in assessing whether Sorto committed a particularly serious crime.

Sorto also attempts to bring factual challenges to the particularly-serious-crime determination. He disputes the weight that the agency afforded several pieces of evidence: the relatively minor nature of his sentence, his lack of intent to cause harm, and the absence of evidence suggesting he was a danger to the community. But under the criminal-alien bar, *see* 8 U.S.C. § 1252(a)(2)(C)–(D), this Court lacks jurisdiction to address those factual disputes related to statutory withholding of removal. *See Jarbough v. Att'y Gen.*, 483 F.3d 184, 189 (3d Cir. 2007) (explaining that "courts have recognized arguments such as that an Immigration Judge or the BIA incorrectly weighed evidence [or] failed to consider evidence . . . are not questions of law under §1252(a)(2)(D)").

6

Although the criminal-alien bar does not apply to CAT withholding, *see Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020), on substantial-evidence review, *see id.*, those challenges are not strong enough to compel a reasonable adjudicator to conclude that Sorto did not commit a particularly serious crime, *see id.* (citing 8 U.S.C. § 1252(b)(4)(B)); *see also N-A-M-*, 24 I. & N. Dec. at 342–43 (explaining that a minor sentence and the lack of dangerousness "are subsequent and unrelated to the commission of the offense," so they are "not the most accurate or salient factor[s] to consider in determining the seriousness of an offense").  Accordingly, those contentions do not provide a basis for granting Sorto's petition.

## II.     Sorto's Challenge to the Denial of CAT Deferral

In denying him CAT deferral, the agency determined that it was not likely that Sorto would be harmed upon return to El Salvador.  Sorto disputes that conclusion and argues that the case should be remanded to undertake the remaining CAT analysis.  *See Myrie v. Att'y Gen.*, 855 F.3d 509, 516–18 (3d Cir. 2017) (explaining that the two-step framework to evaluate torture and acquiescence is necessary for this Court "to be able to give meaningful review to the BIA's decision" (quoting *Awolesi v. Ashcroft*, 341 F.3d 227, 232 (3d Cir. 2003))); *Quinteros v. Att'y Gen.*, 945 F.3d 772, 786–88 (3d Cir. 2019) (explaining that the agency must consider evidence relevant to each step of the *Myrie* analysis to ensure an adequate basis for judicial review).

The substantial-evidence standard governs Sorto's challenge to the agency's factual findings.  *See Nasrallah*, 140 S. Ct. at 1692; *see also Guzman Orellana v. Att'y Gen.*, 956 F.3d 171, 177 (3d Cir. 2020) (explaining that "[t]he substantial evidence

standard requires us to defer to factual findings below as long as they are supported by reasonable, substantial, and probative evidence on the record considered as a whole"). While that standard is "highly deferential," *Nasrallah*, 140 S. Ct. at 1692, an agency's decision to deny relief from removal must still be based "only on the administrative record," 8 U.S.C. § 1252(b)(4)(A). And when a statute requires review of the administrative record, an agency must consider evidence that conflicts with its conclusion. *See Guzman Orellana*, 956 F.3d at 182 (explaining that the agency "may not ignore evidence favorable to the alien" (citation and quotation marks omitted)); *Quinteros*, 945 F.3d at 786 (explaining that if evidence favorable to the alien "is to be disregarded, we need to know why" (quoting *Myrie*, 855 F.3d at 518)); *see also Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). Here, Sorto argues that the agency neglected two facts in his favor: the Facebook post from an unknown resident in Sorto's hometown, and Sorto's testimony that while attempting to obtain a copy of his birth certificate, he heard from a friend, who heard from another person, that gang members were still looking for him**.**

But Sorto's case for CAT deferral depends on a speculative chain of events, each of which he must establish as more likely than not to occur. *See In re J-F-F-*, 23 I. & N. Dec. 912, 917–18 & n.4 (A.G. 2006). Specifically, his factual theory of torture supposes that the gang members were still looking for him after twenty-two years, that they would learn of his return, that they would find him no matter where he lives in El Salvador, and that they would harm him to a degree constituting torture. Yet, the two neglected facts pertain only to the first inference in that chain – that the gang members

8

were still looking for him. And Sorto did not produce evidence that would compel the agency to conclude that the other necessary links in the chain were satisfied. *See* 8 U.S.C. § 1252(b)(4)(B). Thus, it is "highly probable" any error that the agency committed by not expressly considering those pieces of information was harmless because it "did not affect the outcome of the case." *See Lia Hua Yuan v. Att'y Gen.*, 642 F.3d 420, 427 (3d Cir. 2011).

* * *

For the foregoing reasons, we will deny the petition.