**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-1194
_____

AILAN ZHU,
                              Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of a Decision of
the Board of Immigration Appeals
(Agency No. BIA-1 : A208-350-013)
Immigration Judge: Mary C. Lee
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on October 20, 2025

Before: HARDIMAN, FREEMAN, and CHUNG, *Circuit Judges*

(Opinion filed: November 20, 2025)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**FREEMAN**, *Circuit Judge*.

Ailan Zhu petitions for review of the Board of Immigration Appeals' (BIA) decision affirming the denial of her application for cancellation of removal. For the reasons that follow, we will dismiss the petition in part and deny it in part.

**I**

Zhu is a native and citizen of China. She was born in 1974 and entered the United States without inspection in 2003. In 2018, the government charged her with inadmissibility as a noncitizen who was present in the United States without having been admitted or paroled. *See* 8 U.S.C. § 1182(a)(6)(A)(i). Zhu admitted the charge and applied for cancellation of removal. To qualify for that relief, she had to demonstrate (among other things) that her removal would result in "exceptional and extremely unusual hardship" to a qualifying relative who is a United States citizen or lawful permanent resident. 8 U.S.C. § 1229b(b)(1)(D).

In 2019, Zhu had a hearing before an immigration judge (IJ) and offered evidence regarding hardship to four qualifying relatives: her U.S. citizen daughter, E.C., who was then 11 years old; her naturalized U.S. citizen husband, Xiong Zi Chen; and her lawful-permanent-resident parents. Zhu and her entire extended family live in Philadelphia, Pennsylvania. Zhu lives with her daughter, husband, and mother-in-law. Zhu's parents live with one of her brothers. That brother and Zhu's four other siblings all have either U.S. citizenship or lawful-permanent-resident status in the United States.

At age 5, E.C. was diagnosed with a joint connective tissue disorder called Hypermobile Ehlers-Danlos Syndrome ("HEDS"). Because of her condition, E.C. has

2

twisted joints and is prone to falling down. She has physical activity restrictions and is unable to attend gym classes at school. E.C. does not need to see a specialist for regular treatment; instead, she sees a doctor only when she feels discomfort, such as when she fell and sprained her ankle two months before her mother's immigration hearing.

Zhu testified that, if she were removed to China, she would take E.C. with her so she could supervise E.C.'s medical condition. E.C. does very well in U.S. schools. However, as a noncitizen of China, E.C. would not be able to attend public school there and would require a costly private education. Additionally, Zhu fears that E.C. could not get health insurance in China because she is not a Chinese citizen. Moreover, although Zhu speaks to E.C. in both Mandarin and English, E.C. speaks very little Mandarin and does not read or write Chinese characters.

E.C. lived in China for part of her early childhood. Before she turned one, she was sent to live with Zhu's aunt in China so Zhu could work and earn money. E.C. remained in China for over four years, during which time Zhu's husband Chen paid for E.C.'s preschool costs and Zhu's aunt paid for E.C.'s routine healthcare costs.

Chen is the part owner of a glass manufacturing company with seven employees. Together, the couple owns five houses that are worth over $600,000. They live in one of the houses and rent the other four. Chen has high cholesterol, high blood pressure, and high blood sugar. If Zhu were removed, Chen's worry for Zhu and E.C. and his need to take over the care of his elderly mother would cause a strain on his emotional and medical condition. Zhu currently cares for Chen's mother, who has poor vision and joint issues.

Both of Zhu's elderly parents also have health issues. Her father has high blood pressure, high cholesterol, and kidney stones, while her mother has high blood pressure and osteoporosis. Although Zhu's parents live with their son, Zhu takes them to medical appointments, picks up their medications, and helps them with household chores because their other children are busy running businesses.

In addition to the care Zhu provides for her relatives, she works part-time in a Chinese restaurant preparing take-out orders and greeting customers. She does not know what employment she would find in China given her age and how long she has been away from China.

At the conclusion of the hearing, the IJ determined that Zhu had not made the requisite showing of hardship to any of her qualifying relatives. The IJ credited Zhu's testimony that she would take E.C. with her to China but found that Zhu's and E.C.'s separation from their relatives in the United States would be temporary because Chen (a U.S. citizen) could petition for Zhu's return to the United States. The IJ also found that Zhu and Chen have significant assets that Chen can use to support Zhu and E.C. financially during their temporary stay in China. Moreover, E.C. previously lived and was educated in China, although she was very young at the time. And although Zhu had not looked into private English-language schools that E.C. could attend in China, the IJ found that such schools are a viable option for E.C. given her parents' financial resources.

As to E.C.'s medical condition, the IJ found that E.C. does not see a specialist for her HEDS unless she feels discomfort, and that E.C.'s recent ankle sprain was readily

4

treatable. Although E.C.'s medical care in China would be costly, the IJ found that Zhu's and Chen's assets could cover those costs during the duration of Zhu's and E.C.'s time in China.

Finally, the IJ found that Zhu's siblings in the United States could care for Zhu's parents during Zhu's absence from the country.

For these reasons, the IJ denied Zhu's application for cancellation of removal and ordered Zhu removed to China. Zhu then appealed to the BIA.

In a three-page opinion, the BIA affirmed the IJ's determination that Zhu did not satisfy the hardship standard as to any of her qualifying relatives, and it dismissed the appeal. The BIA affirmed the IJ's findings that Zhu and Chen have the financial resources to manage E.C.'s HEDS and to send E.C. to an English-language private school in China. It also affirmed the IJ's finding that Zhu's parents could be cared for by other relatives in Philadelphia. And it determined that Zhu did not show that her parents or husband would be unable to manage their medical conditions upon Zhu's removal.

Notably, the BIA did not address the IJ's finding that Zhu's separation from her family in the United States would be temporary. Despite Zhu's challenge to that factual finding, the BIA addressed Zhu's case as if her removal to China would not be temporary.

Zhu timely petitioned to us for review of the BIA's decision.

## II

We have jurisdiction under 8 U.S.C. § 1252(a)(1) and (2)(D) to review a determination of whether a noncitizen has demonstrated the requisite hardship to qualify

for cancellation of removal. *Wilkinson v. Att'y Gen.*, 131 F.4th 134, 138 (3d Cir. 2025).

Yet our jurisdiction is limited to whether the established facts satisfy the statutory

standard; we may not review the underlying factual findings. *Id.*

To establish "exceptional and extremely unusual hardship" under 8 U.S.C.

§ 1229b(b)(1)(D), an applicant must make a showing "substantially beyond the ordinary

hardship that would be expected when a close family member leaves this country."

*Wilkinson*, 131 F.4th at 142 (quoting *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 62

(BIA 2001)).

We review the agency's hardship determination for substantial evidence. *Id.*

Under that "limited and deferential standard of review," *id.* at 143, we will not disturb the

agency's determination "unless any reasonable adjudicator would be compelled to

conclude to the contrary," *id.* at 142 (quoting *Nasrallah v. Barr*, 590 U.S. 573, 584

(2020)).

Where, as here, the BIA affirms an IJ's decision and adds analysis of its own, we

review both decisions, referring to the BIA's decision generally and to the IJ's decision

when necessary. *Luziga v. Att'y Gen.*, 937 F.3d 244, 251 (3d Cir. 2019).

### III

Zhu's brief primarily challenges the IJ's factual findings. But we are strictly

prohibited from reviewing those. *Wilkinson*, 131 F.4th at 139 ("[F]actual findings remain

strictly unreviewable."); *Wilkinson v. Garland*, 601 U.S. 209, 222 (2024) (emphasizing

that "a court is . . . without jurisdiction to review a factual question raised in an

application for discretionary relief"). Accordingly, we will dismiss the petition insofar as it challenges the IJ's factual findings.

We will deny the petition in remaining part because substantial evidence supports the agency's hardship determination. Zhu's daughter, husband, and parents would suffer hardship upon Zhu's removal. But it would not be "substantially beyond the ordinary hardship that would be expected when a close family member leaves this country." *Wilkinson*, 131 F.4th at 142 (quoting *In re Monreal-Aguinaga*, 23 I. & N. Dec. at 62). As the agency found, Zhu's and Chen's financial resources—which include the business Chen partially owns, the five houses the couple owns, the rental income the couple receives from renting four houses, and Zhu's transferrable work skills—will enable the couple to pay for E.C.'s healthcare and English-language education in China. That is so notwithstanding E.C.'s HEDS—a condition for which E.C. does not require routine care.

The agency also found that Zhu's parents could be cared for by their other five adult children upon Zhu's removal. All five of Zhu's siblings have U.S. citizenship or lawful permanent resident status, live in Philadelphia, and run businesses. Because Zhu's siblings can care for their elderly parents and help them manage their medical conditions, Zhu's parents will not experience exceptional and extremely unusual hardship.

Zhu makes no argument in her brief challenging the agency's hardship determination as to her husband, but substantial evidence supports the agency's determination as to him, too. Chen has only common and treatable medical conditions, and Zhu presented no evidence that Chen needs her assistance to manage those conditions. And while the strain worrying about Zhu and E.C. and caring for his elderly

7

mother will be a hardship, it is not substantially beyond what would be expected when a close family member must leave this country.

\*     \*     \*

For the foregoing reasons, we will dismiss the petition insofar as it raises factual challenges and deny the petition insofar as it challenges the agency's determination about exceptional and extremely unusual hardship.