[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-14377
Non-Argument Calendar
_____

Agency No. A205-475-692

DANILO ANTONIO LANDAVERDE,
LUCILA ALAS-RAMOS,
CARMEN SERRANO-RAMOS,
ROSA LANDAVERDE-ALAS,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(September 29, 2020)

Before JORDAN, NEWSOM, and GRANT, Circuit Judges.

PER CURIAM:

Danilo Landaverde petitions this Court to review the Board of Immigration

Appeals order affirming the denial of his application for asylum, withholding of

removal, and relief under the Convention Against Torture.  We dismiss the petition

in part and deny it in part.

I.

Landaverde, his wife, and their two daughters, all natives and citizens of El

Salvador, entered the United States in June 2012 without inspection.  The

government initiated removal proceedings, alleging that Landaverde was

removable for being present without a valid entry document.  Landaverde

conceded removability and applied for asylum and withholding of removal under

the Immigration and Nationality Act and protection under the United Nations

Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or

Punishment (CAT).[1]  *See* 8 U.S.C. § 1158(a) (asylum); 8 U.S.C. § 1231(b)(3)

(withholding of removal); 8 C.F.R. § 1208.16(c) (CAT).

In support of his application, Landaverde stated that he came to the United

States in 2005 to look for work, leaving his family in El Salvador with his wife's

parents.  He returned to El Salvador in December 2011 after receiving a phone call

threatening to kidnap and kill one of his daughters if he did not pay the caller

---

[1] Landaverde's wife, Lucila Alas-Ramos, and their daughters, Carmen Serrano-Ramos and Rosa
Landaverde-Alas, are "riders" on his application for asylum.  *See* 8 U.S.C. § 1158(b)(3)(A).
They do not have independent claims for withholding of removal or protection under CAT.

2

$10,000. Soon after he arrived in El Salvador, men came to his home and demanded the money. Landaverde recognized two of the men, Giovanni and Julio, who were known to be members of the Barrio 18 gang. When Landaverde told them that he did not have the money, they said that they would "disappear with [his] family." On other occasions, gang members threw rocks at Landaverde's house and banged on the door, demanding that he come out and threatening to kill him and his family. Aside from intimidating them, the gang did not harm Landaverde or anyone in his immediate family.

Landaverde testified that after a couple of months, he reported the gang's threats to the police. According to Landaverde, the police refused to take his statement, telling him that too many people made the same complaints but "nothing happens." Soon after Landaverde made his complaint, Giovanni came to his house and told him that the gang had paid off the police, and that because Landaverde had gone to the authorities, the gang would kill not only his daughter, but his whole family. A few weeks later, Landaverde took his wife and daughters and returned to the United States. Landaverde stated that he had family in other parts of El Salvador, but he did not want to live with them because he did not get along with them.

Landaverde testified that he believed that he was targeted for extortion by the gang because they knew that he had been working in the United States and they

3

thought that he had money.  He acknowledged, however, that the gangs targeted anyone they thought had money, regardless of whether the victim had been in the United States.

Landaverde also claimed that his family had been targeted because his uncle had served in the military on the losing side during the civil war in El Salvador in the 1990s.  Landaverde explained that his uncle had also been the victim of gang-related extortion and had been murdered in 2006 because he refused to "deal with delinquents."  Giovanni and other gang members had been arrested in connection with his uncle's murder, and Giovanni had been convicted of unspecified crimes related to the murder and imprisoned for two or three years.  Landaverde thought that the gang's threats to harm his family were connected to his uncle's murder because one of the gang members told him that the same thing that happened to his uncle would happen to him.  In support of this theory, Landaverde testified that his wife's brother and cousin had also been beaten or killed by gangs.  But he acknowledged, again, that gangs are constantly threatening people in El Salvador and trying to extort money from them, and he agreed that his uncle and his wife's family members could have been harmed "for any number of reasons."

The immigration judge (IJ) denied Landaverde's application and ordered him removed to El Salvador.  The IJ found that Landaverde had not shown that he was eligible for asylum or withholding of removal because (1) the extortion he

4

reported did not amount to persecution because the gang had not actually harmed him or his family, and (2) he had not shown that the gang threatened him "on account of" a protected trait. 8 U.S.C. § 1101(a)(42)(A). Regarding the latter finding, the IJ explained that Landaverde had not articulated a clearly defined "particular social group" to which he belonged and which motivated the gang's threats. *Id.*

Specifically, the IJ found that Landaverde had not shown any nexus between the gang's threats and his work in the United States, his family relationships, or his uncle's military service. Landaverde's testimony indicated that his uncle had been killed because he refused to pay the gangs, not because of his military service more than a decade earlier, and Landaverde had not provided any basis to conclude that he or his wife's relatives had been victimized because of his uncle's connection to the former government.

As to Landaverde's claim for CAT relief, the IJ found that Landaverde had not shown that he would be subject to torture by the government or with the acquiescence of the government if he returned to El Salvador. The IJ noted that the State Department's 2016 Human Rights Report on El Salvador showed that the government had taken steps to curtail gang activity and police corruption, including passing legislation and prosecuting offenders. The IJ noted that the government had previously prosecuted and imprisoned Giovanni for his gang-

related activities, and it did not find Landaverde credible when he testified that the police refused to even take his complaint about Giovanni's threats to kill him and his family.

Overall, the IJ found Landaverde's story implausible. The IJ pointed out that it was unlikely that Landaverde had suddenly began receiving gang threats after living in the United States for six years, or that he would stay in El Salvador for four months before returning here if the gang had repeatedly threatened to kill his family. The IJ found it more likely that Landaverde had worked in the United States until he saved enough money to return to El Salvador and collect his family.

Landaverde appealed to the BIA. He argued that the IJ had erred in determining that he did not belong to a qualifying "particular social group," contending that he had articulated two such groups: "families who previously worked in the U.S. whose children are subject to abduction because the government is unable to act, prevent or accept abductions as real," and "a relative of a family member who was former military who served in the civil war." He also argued that he qualified for asylum and CAT relief because the gang's threats to murder his family constituted mental torture and the government had acquiesced in the torture by refusing to take his complaint about the threats.

The BIA dismissed Landaverde's appeal, agreeing with the IJ that Landaverde had not shown past persecution because his family had not actually

been harmed, and that he had failed to show a nexus between the alleged extortion and the family relationship he described. The BIA also held that Landaverde's proposed social group, which it described as "individuals who have relatives who are military members, and who have lived in the United States and as a result may be subjected to extortion or persecution," did not meet the standard for asylum or withholding of removal because it was overbroad, amorphous, and insufficiently identifiable. The BIA affirmed the IJ's denial of protection under CAT because Landaverde had not shown that it was more likely than not that he would be tortured by or with the acquiescence of the government if he returned to El Salvador. Landaverde now seeks review of the final order of removal and denial of his application for CAT relief.

## II.

## A.

Regarding his application for asylum and withholding of removal, Landaverde argues that the IJ erred when it concluded that he had failed to show a nexus between his uncle's military service and the gang threats he experienced.[2] Before reaching the merits of this argument, however, we must assess whether we

---

[2] Landaverde does not challenge the BIA's finding that the attempted extortion did not amount to persecution, and he makes only passing references to his argument before the BIA that he belonged to two qualifying "particular social groups" (families who had worked in the United States and whose children were subject to abduction, and families of people who served in the military during the civil war). He has therefore abandoned those issues, and we need not address them. *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

have jurisdiction to do so. *Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1297 (11th Cir. 2015). We consider the question of our own subject-matter jurisdiction de novo. *Id.* Our jurisdiction to review immigration removal proceedings is limited by statute to review of final orders of removal and, more narrowly, to claims for which "the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1); *see id.* § 1252(b)(9). To meet the statutory requirement for exhaustion of administrative remedies, a petitioner must raise each of his claims before the BIA. *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006). While a petitioner is not required "to use precise legal terminology or provide well-developed arguments to support his claim" in order to raise the claim before the BIA for purposes of exhaustion, he must both raise "the core issue" and "set out any discrete arguments he relies on in support of that claim." *Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 800–01 (11th Cir. 2016) (citations and quotation marks omitted). And when a petitioner has failed to raise an argument before the BIA that he attempts to raise in this Court, we lack jurisdiction to consider the argument "even if the BIA addressed the underlying issue *sua sponte.*" *Amaya-Artunduaga*, 463 F.3d at 1251; *see Jeune*, 810 F.3d at 800.

We lack jurisdiction to consider Landaverde's argument that his uncle's military service was a central reason for the gang's threats to harm him and his

8

family because Landaverde failed to raise that argument before the BIA. While Landaverde stated in passing—in connection with his argument that his family was a "particular and well-defined" social group—that he "was targeted due to the political position of his family," such "[u]nadorned, conclusory statements do not satisfy" the exhaustion requirement. *Indrawati*, 779 F.3d at 1297. We therefore dismiss the petition as to that issue.

### B.

As to his application for CAT relief, Landaverde argues that the IJ failed to consider the implication of his uncle's military service when concluding that he had not shown that the government would acquiesce in the gang's threatened violence against him and his family. Because the BIA expressly agreed with and adopted the IJ's reasoning in affirming the denial of his application for CAT relief, we review both decisions. *Jeune*, 810 F.3d at 799.

An applicant seeking protection under the CAT bears the burden of proving that it is more likely than not that he would be tortured if removed to the proposed country of removal. *Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1242 (11th Cir. 2004); 8 C.F.R. § 208.16(c)(2). To meet this burden, he must show that the anticipated "severe pain or suffering" would be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1). We review the IJ's factual

9

determinations related to the denial of CAT relief under the "highly deferential" substantial evidence standard. *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (citation omitted). Under this standard, the "agency's 'findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)). "Pursuant to this test, we view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1364 (11th Cir. 2011) (citation and quotation marks omitted).

Here, the IJ's determination that Landaverde could not show that the government would acquiesce in his torture by gang members if he returned to El Salvador was supported by substantial evidence. The IJ relied upon the State Department's country report on El Salvador, which showed that the government generally did not condone gang activity—to the contrary, the report showed that government forces frequently clashed with gang members—and that autonomous government institutions had taken steps to investigate and prosecute corruption. Landaverde's own testimony showed that the police in his area had arrested and prosecuted local gang members, including Giovanni, in the past. And Landaverde testified that he had family living in other parts of El Salvador, indicating that he could relocate to avoid Giovanni and the other gang members who threatened him. *See* 8 C.F.R. § 208.16(c)(3)(ii) (evidence that "the applicant could relocate to a part

10

of the country of removal where he or she is not likely to be tortured" is relevant to eligibility for CAT relief).  Further, Landaverde offered no evidence to support his contention that the government would not protect him from the gang because of his uncle's military service during the civil war.

The record before us does not compel a conclusion that Landaverde would be tortured by or with the acquiescence of the government if he returned to El Salvador.  *See Seck*, 663 F.3d at 1364 ("[T]he mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." (citation omitted)).  We therefore deny Landaverde's petition on this issue.

**PETITION DISMISSED IN PART AND DENIED IN PART.**