**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1862
_____


NOHEMY ESPERANZA LOPEZ REYES;
E.J.L.L.,
                              Petitioners

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA


_____


On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A209-278-251, A209-278-252)
Immigration Judge: Charles M. Honeyman
_____


Submitted Under Third Circuit L.A.R. 34.1(a):
December 8, 2020
_____


Before: MCKEE, PORTER, and FISHER,
*Circuit Judges*.

(Filed: December 16, 2020)


_____


OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

PORTER, *Circuit Judge*.

Nohemy Esperanza Lopez Reyes,[1] a native and citizen of Honduras, petitions for review of an order of the Board of Immigration Appeals ("BIA") upholding the denial of her applications for asylum, withholding of removal under the Immigration and Nationality Act ("INA"), and protection under the Convention Against Torture ("CAT"). After denying Lopez's applications for relief from removal, an Immigration Judge ("IJ") ordered that Lopez and her son be removed to Honduras.[2] Because the factual findings underlying the agency's denial of Lopez's applications are supported by substantial evidence, we will deny the petition for review.[3]

## I

In September 2016, Lopez and her son were paroled into the United States after an asylum officer found Lopez to have a credible fear of persecution. The Department of Homeland Security charged Lopez and her son with removability, which they conceded. Lopez sought asylum, withholding of removal, and CAT protection. She claimed to fear persecution on account of her membership in two social groups: (1) "young Honduran single mothers . . . of a boy being pursued by a gang," and (2) "young Honduran women business owners." A.R. 45.

---

[1] Both parties refer to the lead petitioner as "Lopez" in their briefing. We do the same.
[2] Lopez's son, a minor, was listed as a derivative beneficiary on her asylum application. The IJ denied the derivative asylum application. Although Lopez's son presents no claim on his own, he is a co-petitioner in this case.
[3] We have jurisdiction under 8 U.S.C. § 1252(a).

2

Before the immigration court, Lopez explained that she was a single mother whose son's father was married to another woman and had children with that woman. Lopez claimed that she owned a food stand in Honduras and that members of a criminal gang forced her to pay a "war tax." A.R. 363–64, 371. This gang targeted her because she "was alone with [her] son" and the gang tends to "search for women who are alone." A.R. 364. Lopez testified that because the gang "saw that [she] had a business," it believed that it could get money from her. A.R. 131.

When Lopez could not keep up with the gang's extortion demands, gang members threatened to harm her and force her ten-year-old son to join the gang if she did not continue to pay. Lopez testified that she paid the extortion for two additional weeks because she did not want the gang to kidnap her son, and then left Honduras. Lopez explained that the gang worked with the police and would kill her if she reported the extortion and threats.

The IJ found that Lopez was "credible overall." A.R. 48. But he nevertheless denied Lopez's applications for relief from removal. The IJ found that neither of Lopez's articulated social groups is cognizable under the INA. As to the first proposed social group, he found that "gang recruitment standing alone is not an adequate formulation of a cognizable social group" and that the facts of this case did not demonstrate that a social group involving animus against Lopez's family was distinct enough. A.R. 48, 50–51. As to the second group, he found that "articulated groups of business owners are too broad and amorphous to constitute a sufficiently particular group." A.R. 47.

Although the IJ rejected the two proposed particular social groups, he ruled in the alternative that even if Lopez's proposed social groups were cognizable, the threats Lopez received were due to the gang's desire to extort money from her and not principally on account of her membership in either group. The IJ deemed "any interest in [Lopez's] son . . . incidental and tangential" to the gang's central interest in extorting money. A.R. 49. Thus, the IJ found that Lopez did not demonstrate a sufficient nexus between her membership in the proposed social groups and the harm she feared. As a result of these findings, the IJ concluded that Lopez "ha[d] not suffered past persecution on account of one of the statutory grounds and ha[d] not established a well-founded fear" of persecution, requiring rejection of her asylum claim. A.R. 51. Because Lopez was ineligible for asylum, she was also ineligible for withholding of removal under the INA, which requires a showing of a "clear probability of future persecution" rather than just a well-founded fear of persecution. A.R. 46, 51. Turning to Lopez's CAT claim, the IJ concluded that Lopez had not "proven that it is more probable than not that she would be tortured" if returned to Honduras, so she was not entitled to CAT protection. A.R. 51. After denying all of Lopez's applications, the IJ ordered her and her son removed to Honduras.

Lopez appealed to the BIA. She contended that, contrary to the IJ's findings, the record established that she was "extorted by a criminal gang to coerce [her son's] recruitment into the gang due to [her] relationship with her son, due to her family relationship, and because she was a young woman in Honduras." A.R. 3. The BIA "[a]ssum[ed] arguendo that one or more of [Lopez's] proffered particular social groups is

cognizable" but upheld the IJ's determination that the gang's interest in Lopez's son was incidental and tangential to its central motive to extort money from her. A.R. 3–4. The BIA also rejected Lopez's claim that "government corruption and the high rate at which women suffer violence in Honduras" made her eligible for CAT protection, explaining that Lopez failed to establish that she personally would more likely than not be tortured upon return to her country. A.R. 4. Finding her challenges to the IJ's decision without merit, the BIA dismissed Lopez's appeal.

This petition for review followed.

## II

Because the BIA affirmed the IJ's determination that Lopez failed to show the required nexus between the harm she suffered and membership in her proposed social groups while at the same time adopting the IJ's reasoning, we review both the BIA's decision and the IJ's decision. *See Uddin v. Att'y Gen.*, 870 F.3d 282, 289 (3d Cir. 2017) ("When . . . the 'BIA's opinion directly states that the BIA is deferring to the IJ, or invokes specific aspects of the IJ's analysis and factfinding in support of the BIA's conclusions,' we review both decisions." (quoting *Oliva-Ramos v. Att'y Gen.*, 694 F.3d 259, 270 (3d Cir. 2012))). The BIA did not adopt the IJ's reasoning in rejecting Lopez's CAT claim, however, so we review only the BIA's decision on that score. *See Calla-Collado v. Att'y Gen.*, 663 F.3d 680, 683 (3d Cir. 2011).

Our review—whether just of the BIA's decision or of both decisions—is "highly deferential." *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020). "The standard of review is the substantial-evidence standard: The agency's 'findings of fact are conclusive unless

5

any reasonable adjudicator would be compelled to conclude to the contrary.'" *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)). We must uphold all agency findings that are "supported by reasonable, substantial and probative evidence on the record considered as a whole." *Kayembe v. Ashcroft*, 334 F.3d 231, 234 (3d Cir. 2003). This is an "extraordinarily deferential standard." *Abdulrahman v. Ashcroft*, 330 F.3d 587, 598 (3d Cir. 2003).

## III

### A

Lopez seeks asylum and withholding of removal based on her membership in two proposed social groups. An asylum applicant bears the burden of establishing that her membership in a particular social group (or other protected characteristic) "was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i). An alien seeking withholding of removal under 8 U.S.C. § 1231(b)(3)(A) because of persecution based on membership in a particular social group also bears the burden of establishing the required nexus between the harm she suffered or will suffer and her membership in that group. *See Gonzalez-Posadas v. Att'y Gen.*, 781 F.3d 677, 684–85 (3d Cir. 2015) ("To establish eligibility for withholding of removal based on membership in a particular social group, an applicant must establish both that the group itself is properly cognizable as a 'social group' within the meaning of the statute, and that [her] membership in the group is 'one central reason' why [she] was or will be targeted for persecution." (citing *Matter of C-T-L-*, 25 I. & N. Dec. 341, 344–46 (BIA 2010))). "For a protected characteristic to qualify as 'one central reason,' it must be an essential or

6

principal reason for the persecution." *Id.* at 685. As a result, neither asylum nor withholding of removal may be granted "when the characteristic at issue 'played only an incidental, tangential, or superficial role in persecution.'" *Id.* (quoting *Ndayshimiye v. Att'y Gen.*, 557 F.3d 124, 130 (3d Cir. 2009)).

Lopez also seeks CAT protection. An applicant for such protection bears the burden of establishing "that it is more likely than not that . . . she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). Such torture must be inflicted "by or at the instigation of or with the consent or acquiescence of a public official." *Myrie v. Att'y Gen.*, 855 F.3d 509, 515 (3d Cir. 2017) (internal quotation marks omitted) (quoting *Auguste v. Ridge*, 395 F.3d 123, 151 (3d Cir. 2005)).

**B**

With these principles of law in mind, we turn to Lopez's challenge to the agency's denial of relief from removal. Lopez urges us to overturn the agency's findings that she failed to demonstrate (1) the required nexus between her mistreatment and her proposed particular social groups and (2) that she would more likely than not be tortured if removed to Honduras. Because the record does not compel rejection of the agency's findings, we must leave them undisturbed.

With regard to the issue of nexus, Lopez contends that her "relationship with her son is one of the primordial reasons why she is targeted by the [gang]." Pet'rs Br. 16. But that claim is contrary to her own testimony before the IJ, where she stated that the gang extorted her because it believed that she was as an easy target for financial gain. Indeed, she testified that the gang threatened to recruit her son only if she stopped paying the

7

"tax." The gang never contacted her son or made any effort to recruit him; rather, it threatened to do so if Lopez did not continue paying them.[4] We previously upheld an agency determination that gang members pursuing an asylum applicant out of a "bare desire for money" did not act on account of a ground protected by the INA. *Shehu v. Att'y Gen.*, 482 F.3d 652, 657 (3d Cir. 2007). We uphold the agency's determination here because substantial evidence supports the agency's finding that the gang's desire for money was the central motive for its actions and that the applicant's membership in proposed particular social groups was merely "tangential." A.R. 49. Because Lopez has not shown that a protected ground was one central reason for her mistreatment by the gang, she is not eligible for asylum or withholding of removal under the INA. The agency properly denied her applications for both forms of relief.

Lopez's challenge to the denial of her application for CAT protection is also without merit. Lopez focuses on the high rates of violence against women in Honduras and alleges that "[t]he government is unwilling or unable to protect [women]" from that violence. Pet'rs Br. 20. But she does not demonstrate, as she must to prevail in this Court, that any reasonable factfinder would be compelled to reject the agency's finding that she failed to show a particularized risk of torture. *See Wang v. Ashcroft*, 368 F.3d 347, 350 (3d Cir. 2004) (denying a petition for review where the petitioner failed to meet his burden to establish that he would "more likely than not . . . be tortured upon return").

---

[4] The record also supports the IJ's conclusion that "[t]here is no evidence that single business owners [were] specifically targeted." A.R. 50. Lopez does not meaningfully challenge that finding in her brief.

8

Lopez's fear of generalized violence against women in Honduras is not enough to meet her burden. Because the agency's finding is supported by substantial evidence, we uphold it. And because Lopez has not shown that she would more likely than not be tortured if returned to Honduras, the agency properly denied her application for relief under CAT.

\* \* \*

For the foregoing reasons, we will deny the petition for review.