**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2201
_____

NOEL RICARDO STEPHENS,
a/k/a Keith Price, a/k/a Larry Strong,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A079-073-152)
Immigration Judge:  Jack H. Weil
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 19, 2021

Before: MCKEE, SHWARTZ and RESTREPO, <u>Circuit</u> <u>Judges</u>

(Opinion filed: March 29, 2021)
_____

OPINION[*]
_____

PER CURIAM

Noel Ricardo Stephens petitions for review of the Board of Immigration

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Appeals' (BIA) order dismissing his appeal from an immigration judge's (IJ) decision denying his applications for asylum, withholding, and relief under the Convention Against Torture (CAT), and ordering his removal. For the reasons that follow, we will grant the petition and remand to the BIA for further proceedings.

Stephens is a native and citizen of Jamaica who entered the United States as a nonimmigrant in 1999. His status was adjusted to legal permanent resident in May 2004. In 2011, he pleaded guilty to federal drug and weapons charges. See W.D.N.Y. Crim. No. 6:11-cr-06037. As a result, he was charged with removability for having been convicted of an aggravated felony, see 8 U.S.C. § 1227(a)(2)(A)(iii), a controlled substance offense, see 8 U.S.C. § 1227(a)(2)(B)(i), two crimes involving moral turpitude ("CIMTs"), see 8 U.S.C. § 1227(a)(2)(A)(ii), and a firearms offense, see 8 U.S.C. § 1227(a)(2)(C). He appeared before an immigration judge (IJ) and conceded removability, and the charges were sustained.

Stephens applied for asylum, withholding of removal, and for relief under the Convention Against Torture ("CAT"). After a hearing, the IJ issued a decision determining that Stephens was convicted of a "particularly serious crime" and, therefore, that he was only eligible for deferral of removal under the CAT. See 8 U.S.C. § 1231(b)(3)(B)(ii); 8 C.F.R. §§ 208.31, 1208.16(d)(2). Stephens' CAT claim was predicated on his assertion that he would be subject to torture in Jamaica at the hands of the police or the community because of his status as a bisexual and as an informant for the U.S. Immigration and Customs Enforcement (ICE) Agency. The IJ denied Stephens CAT relief after determining that his testimony was "too vague" to carry the burden of

2

proof on its own and that he had failed to provide reasonably available corroborating evidence.

On appeal, the Board of Immigration Appeals (BIA) concluded that Stephens had waived any challenge to the "particularly serious crimes" determination by failing to raise it in his brief. The BIA then expressed its agreement with the IJ that Stephens did not establish eligibility for relief under the CAT. The appeal was dismissed, and this petition for review ensued.

We have jurisdiction to review final orders of the BIA pursuant to 8 U.S.C. § 1252. Because Stephens is removable by virtue of his conviction for an aggravated felony, our jurisdiction is generally limited to questions of law and constitutional claims, see id. § 1252(a)(2)(D), although we retain jurisdiction to review factual challenges to the CAT decision, see Nasrallah v. Barr, — U.S. —, 140 S. Ct. 1683, 1688 (2020). We review the agency's findings of fact under the substantial-evidence standard pursuant to which "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." Nasrallah v Barr, 140 S. Ct. 1683, 1692 (2020) (quoting 8 U.S.C. § 1252(b)(4)(B).

Because Stephens appears pro se before the Court as an immigration petitioner, the need to construe his claims broadly is "accentuate[d]." See Higgs v. Att'y Gen., 655 F.3d 333, 340 (3d Cir. 2011). So construed, the arguments in his brief challenge the Agency's denial of CAT relief as unsupported by substantial evidence.

To establish a CAT claim, Stephens had to show that he is "more likely than not" to be tortured "by or at the instigation of or with the consent or acquiescence of" a

Jamaican public official. 8 C.F.R. § 1208.16(c)(2); § 1208.18(a)(1); Sevoian v. Ashcroft, 290 F.3d 166, 174-75 (3d Cir. 2002). Stephens was required to establish his entitlement to relief by objective, not subjective, evidence. Kamara v. Att'y Gen., 420 F.3d 202, 213 (3d Cir. 2005).

We first address the Agency's treatment of Stephens' CAT claim based on his sexual orientation. Stephens testified that he is bisexual, and that he has had numerous boyfriends, including his current boyfriend, Leyton Ramsay, a transgender female. Subsequent to the hearing,[1] Stephens provided a letter from Ramsay stating that she and Stephens had a "physical relationship" while in prison; they could not have a sexual relationship because BOP policies prohibited it. A.R. at 13-14. She maintained that the "entire compound knew we were together" and that "was upsetting to many other Jamaicans in the facility." Id. at 14. According to Ramsey, these inmates threatened to beat up Stephens, and they threatened to kill her and Stephens "on spot" if they were ever seen in Jamaica. Id. She also indicated that two Jamaican inmates that Stephens knew told him that they called "family/mutual friends in New York and Jamaica to tell them that Noel was in prison having sex with another man." Id. Ramsey stated that "everyone [in Jamaica] is talking about [Stephens] and the area leaders are saying he cannot come

---

[1] At the close of his immigration hearing, the IJ advised Stephens that his testimony was insufficient to support his claims absent corroborating evidence. The IJ agreed to let the record remain open for 30 days to allow Stephens an opportunity to provide corroborating evidence or explain why he could not provide such evidence. A.R. at 175-76.

back to Jamaica because he was sleeping with a man in prison." Id. at 15. As a result of this, Ramsey asserted that Stephens' life would be in danger should he return to Jamaica.

In addressing this claim on appeal, the Board appears to have assumed that Stephens had adequately established that he was a bisexual.[2] It nevertheless found no error in the IJ's decision that Stephens had failed to demonstrate that he more likely than not would be tortured because of his sexual orientation if removed to Jamaica, or that any such torture would be by or with the consent of the Jamaican government. The Board emphasized the IJ's reliance on country conditions evidence, particularly the 2018 State Department Human Rights Report, which indicated that while the LGBTQ community faces discrimination, threats, and harassment, its members are not subjected to torture or severe harm. A.R. 207-08. The Report also indicated that Jamaican law criminalizes consensual same-sex relations between men, but that the government enforced that portion of the law, "only in  cases of sexual assault and child molestation" and "[o]fficials did not prosecute consensual same-sex sexual conduct between men." Id. But the IJ gave "little weight" to Ramsay's letter, which detailed both specific death threats by Jamaicans against Stephens because of his bisexuality and Ramsey's account of witnessing police turn a blind eye toward the abuse of LGBTQ individuals. A.R. 13-16. The Board agreed with the IJ's finding that the letter was inconsistent with Stephens'

---

[2] The Board explicitly declined to rely on the IJ's determination that Stephens' testimony, by itself or in conjunction with Ramsey's letter, was insufficient to meet his burden to establish his bisexuality. BIA Op. at 2, n.1.

testimony and the other evidence in the record.  However, this finding by the Agency is not supported by substantial evidence.

The IJ found two inconsistencies between Ramsay's letter and Stephens' testimony.  A.R. at 93.  First, the IJ noted that while Stephens claimed that Ramsay was his current partner, in her letter Ramsay discussed their relationship while in prison and did not indicate that they were presently together.  A.R. at 13-14.  Although the status of their then-current relationship was not material to Stephens' claim, the IJ could consider a discrepancy with the evidence in making credibility determinations and determining whether to discount it.  See 8 U.S.C. § 1158(b)(1)(B)(iii).  But the mere fact that Ramsay did not explicitly state that she was in a current relationship with Stephens does not make her letter necessarily inconsistent with his testimony that they were; she does not refer to Ramsay as her past partner or deny they are currently together.  In fact, Ramsay states that "I love Noel," and she indicates that she speaks with Stephens "over three times every week" and is in touch with his family in Jamaica.  A.R. at 15.  Moreover, the point of her letter was to describe the death threats made against Stephens as the result of his relationship with Ramsay while they were imprisoned together.  Given this, the Agency erred in determining that Ramsay's letter was inconsistent on this basis.

Next, the IJ determined that Ramsey's letter and Stephens' testimony were inconsistent because Stephens did not testify to the assertions in Ramsay's letter that he was threatened while in prison by Jamaican inmates who claimed that they would kill him if they saw him in Jamaica.  See A.R. at 93.  As the IJ noted, this information was "material and highly relevant to a central basis" of Stephens' claim.  But a review of the

6

record indicates that Ramsey's letter is not inconsistent. Stephens stated in his application for relief that he feared persecution in Jamaica because "I was beat up by the Jamaicans in the prison I was at and told I will be killed if we ever go back to Jamaica and most of those guys who was there know me very well and wear (sic) I used to live in Jamaica." A.R. at 273. He further explained that information about his sexual orientation was not publicly known: "I was lock[ed] up when most of this start coming out because the transgender I was dateing (sic) had pictures of me and him together sleeping in [h]is phone that's when everybody found out I really have a boyfriend." A.R. at 276. During the hearing, the IJ's questioning on this claim was strictly geared toward establishing whether Stephens was a bisexual; neither the IJ nor the Government asked Stephens about the threats he described in his application for relief, despite the fact that the threats were central to his claim. Nevertheless, Stephens testified that "it all came out when a picture of me and another trans-gender was together and Jamaican guys got a hold of it, it was just a whole big situation. It got back to Jamaica – man, it was just all down, downhill from right there. . . . Nobody knew, knew about it. It came out when me and my boyfriend got into it and pictures started coming out. . . . This was 2000 – early 2010." A.R. at 158, 160. When Ramsey's letter is viewed in conjunction with both Stephens' testimony and the application for relief, it is not inconsistent on this point.

Because neither of the IJ's bases for determining that Ramsey's letter was inconsistent with Stephens' testimony is adequately supported by the record, the Agency erred in discounting it. And because it is unclear how the Agency might have weighed the letter in determining whether Stephens had met his burden of proof on the CAT

7

claim, the error is not harmless.  See Yuan v. Att'y Gen., 642 F.3d 420, 427 (3d Cir. 2011) (applying harmless error on immigration review "when it is highly probable that the error did not affect the outcome of the case").  We accordingly will remand to the Board so that it may reevaluate this CAT claim in light of this opinion.

The BIA did not err in upholding the IJ's denial of Stephens' CAT claim based on his status as an ICE informant.  Stephens testified that he would likely be tortured by security forces in Jamaica as retribution for the information he provided as an ICE informant against their family or close friends.  For purposes of the appeal, the Board assumed that Stephens was an ICE informant.  A.R. at 4.  It nevertheless agreed with the IJ that Stephens had failed to demonstrate that he was more likely than not to be subject to torture in Jamaica because of his informant status.  The record does not compel a contrary finding.  In particular, the Agency properly concluded that the objective evidence in the record did not support Stephens' claim that security forces targeted confidential informants.  See A.R. at 96; 194-95, 197-98.  And substantial evidence supports the conclusion that Stephens' failed to "provide evidence of any ties between the persons he informed upon and the Jamaican security forces that he fears will target him because of his role as a confidential informant."  A.R. at 4.  Stephens' testimony on this claim was vague and did not convincingly establish that security forces in Jamaica would harm him; he failed provide any details including any of their names, their relationship with specific individuals on whom he had informed, or how they would know he was the informant.  Finally, the Board agreed with the IJ that Stephens' claim relied on a

hypothetical chain of events: that "unnamed individuals"[3] would know that Stephens had informed on them; those individuals would have to know he was back in Jamaica or be in the same place and recognize him or be able to locate him regardless of where he went in Jamaica; and those individuals would have to have a relationship with someone in the security forces intent on harming him. Substantial evidence supports the conclusion that Stephens failed to show that each link in that hypothetical chain of events is more likely than not to occur. See In re J-F-F-, 23 I. & N. Dec. 912, 918 & n.4 (A.G. 2006).

Based on the foregoing, we will grant the petition for review, vacate the BIA's order, and remand to the BIA for further proceedings consistent with this opinion.

---

[3] The IJ found that Stephens failed to identify the Jamaican Nationals who were arrested and removed because of him. This finding was clearly erroneous. Stephens provided several names of individuals during the hearing, and, afterwards, he sent the IJ a list of additional names. See A.R. at 146-47, 342. Nevertheless, the Agency's error was harmless.