**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3566
_____

ADEBISI TAFIKE ADIGUN,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A099-029-937)
Immigration Judge:  Alice Song Hartye
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
August 18, 2021

Before:  JORDAN, MATEY and NYGAARD, Circuit Judges

(Opinion filed: August 18, 2021)
_____

OPINION[*]
_____

PER CURIAM

    Adebisi Tafike Adigun, proceeding pro se, petitions for review of an order of the

Board of Immigration Appeals (BIA) dismissing his appeal from the Immigration Judge's

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

(IJ) order denying his application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). For the reasons that follow, we will deny the petition.

Adigun, a native and citizen of Nigeria, entered the United States as a nonimmigrant in 2002. His status was adjusted to an F-1 nonimmigrant student in January 2003.[1] In 2011, Adigun was convicted of conspiracy to possess with intent to distribute cocaine and cocaine base, possession with intent to distribute cocaine and cocaine base, and possession with intent to distribute cocaine, in violation of 18 U.S.C. §§ 841(a)(1) & 846. He was then charged with removability for having been convicted of a drug trafficking aggravated felony, see 8 U.S.C. § 1227(a)(2)(A)(iii). At a hearing before the immigration judge (IJ), he conceded the drug trafficking charge and his removability as an aggravated felon. Adigun filed an I-589 application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). His CAT claim was predicated on his assertion that he would be subject to torture in Nigeria at the hands of the police or the community because of his sexual orientation.

Adigun and his brother testified at an immigration hearing. The IJ noted inconsistencies and omissions in Adigun's application that caused her "significant hesitation," but she did not make an adverse credibility determination. She concluded that Adigun was convicted of an aggravated felony and, therefore, he was statutorily

---

[1] Adigun was charged with removability in 2008 based on his failure to maintain compliance with the conditions of his nonimmigrant status under 8 U.S.C. § 1227. The immigration proceedings were administratively terminated in August 2010 when Adigun was taken into custody on criminal charges.

ineligible for asylum and cancellation of removal. See 8 U.S.C. § 1229(b). The IJ further found that Adigun's drug trafficking offense constituted a "particularly serious crime," precluding his eligibility for withholding of removal under either the INA or the CAT; he was potentially eligible only for deferral of removal under the CAT. See 8 U.S.C. §§ 1158(b)(2)(A)(ii), (B)(i); 8 U.S.C. § 1231(b)(3); 8 C.F.R. § 1208.16(d). She denied that claim after determining that Adigun had not suffered past torture, and that the objective evidence did not support Adigun's subjective belief that he would be tortured on account of his sexuality should he return to Nigeria.

On appeal, the Board of Immigration Appeals (BIA) concluded that Adigun waived the issue of whether he had been convicted of an aggravated felony or a "particularly serious crime" because he did not raise it in his brief. The Board then expressed its agreement with the IJ that Adigun did not establish eligibility for relief under the CAT. This petition for review ensued.

We have jurisdiction to review final orders of the BIA pursuant to 8 U.S.C. § 1252. Because Adigun is removable by virtue of his conviction for an aggravated felony, our jurisdiction is generally limited to questions of law and constitutional claims, see id. § 1252(a)(2)(D), although we retain jurisdiction to review factual challenges to the CAT decision, see Nasrallah v. Barr, 140 S. Ct. 1683, 1688 (2020). We review the agency's findings under the substantial-evidence standard pursuant to which "[t]he agency's findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." Id. at 1692 (citation omitted).

To establish a claim for deferral of removal, Adigun had to show that he is "more likely than not" to be tortured "by or at the instigation of or with the consent or acquiescence of" a Nigerian public official. 8 C.F.R. § 1208.16(c)(2); § 1208.18(a)(1); Sevoian v. Ashcroft, 290 F.3d 166, 174-75 (3d Cir. 2002). The likelihood of torture consists of two parts: a factual component ("what is likely to happen to the petitioner if removed") and a legal one ("does what is likely to happen amount to the legal definition of torture"). Kaplun v. Att'y Gen., 602 F.3d 260, 271 (3d Cir. 2010). Government acquiescence is similarly composed of a factual ("how public officials will likely act in response to the harm the petitioner fears") and legal component ("whether the likely response from public officials qualifies as acquiescence"). Myrie v. Att'y Gen., 855 F.3d 509, 516 (3d Cir. 2017).

Adigun argues that the Agency either improperly weighed, ignored, or failed to meaningfully engage with certain evidence. The appropriate weight afforded to an alien's evidence is largely a matter of discretion. See Xiao Ji Chen v. U.S. Dep't of Justice, 471 F.3d 315, 342 (2d Cir. 2006). And although the Agency has "a duty to explicitly consider any . . . evidence submitted by an applicant that materially bears on his claim," Zheng v. Att'y Gen., 549 F.3d 260, 268 (3d Cir. 2008) (citation omitted), it need not "expressly parse or discuss each piece of evidence." Liem v. Att'y Gen., 921 F.3d 388, 395 (3d Cir. 2019). As discussed below, the Agency meaningfully considered Adigun's evidence and did not err in determining that it was insufficient to establish eligibility for CAT relief.

4

Adigun argues that the Agency erred in concluding that he had not shown that the Nigerian Government would likely acquiesce to his torture by non-state actors. However, substantial evidence supports the Agency's determination that Adigun was not more likely than not to face torture. The Agency considered the Nigeria 2018 Human Rights Report ("the Report") prepared by the U.S. Department of State which discussed the Same Sex Marriage Prohibition Act (SSMPA), a law passed in 2014 prohibiting same sex marriage and criminalizing "all forms of activity supporting or promoting" gay rights. A.R. at 303-351. Adigun also submitted a *New York Times* article describing a brutal attack in 2014 by a mob on five young gay men, who were then dragged to a police station where the officers "further beat and insulted them." A.R. at 382. Both the IJ and the BIA acknowledged that the country conditions evidence showed that, in the wake of SSMPA's passage, LGBTI individuals faced increased violence and harassment. IJ Op. at 13-14; BIA at 3. The Agency also noted that, according to the Report, "the law had become a tool used by police and members of the public to legitimize human rights violations against LGBTI persons." IJ Op. at 13; BIA at 3. As Adigun notes, the Report states that these violations included "torture, sexual violence, arbitrary detention, extortion, and violations of due process rights." A.R. at 343. But as the Government points out, the Report did not indicate that "these rights violations have occurred to any significant degree," and the *New York Times* article describes only instances of mob violence prompted by SSMPA's passage. Gov't's Br. at 33. Indeed, the report does not detail any instances of torture or other significant human rights violations.

The Agency also considered his brother's testimony that their uncle "is believed to have been kidnapped and killed due to his sexuality." Appellant's Br. at 13. The IJ determined that his brother credibly testified, and that he and Adigun "believe this to be true." IJ Op. at 13. However, absent any evidence in the record to support the testimony, the BIA found no clear error with the IJ's decision to discount it. BIA Op. at 2. After considering all the evidence, the Agency determined that Adigun likely would face "discrimination and mistreatment" based on his sexuality, but that the harm would not rise to the level of torture. IJ Op. at 14; BIA Op. at 3. The record does not compel a different result.

Substantial evidence also supports the Agency's conclusion that Nigerian authorities would not acquiesce to any torture Adigun claimed he would face. Contrary to Adigun's claim, the Agency did not base its acquiescence determination on the "mere fact" that law enforcement accepted a complaint from his father regarding threats to Adigun's life. Appellant's Br. at 12. Rather, it found, "based on the overall record," that he had not "shown that the Nigerian government will acquiesce to torturous acts against him." BIA Op. at 3. The Agency did not abuse its discretion in discounting affidavits written by Nigerian law enforcement officials indicating that Adigun would be tortured by the public or by the authorities; the officials were unavailable for questioning, and although they were purportedly from different parts of Nigeria, the affidavits were identical. See A.R. at 371-72. Moreover, Adigun admitted at the hearing that the affidavits may have been prepared by a lawyer. A.R. at 219-21. In considering the country conditions evidence, the IJ concluded only that Adigun "may be . . . possibly

6

arrested," not that he would be imprisoned.  IJ Op. at 14.  The BIA affirmed,

emphasizing, as the IJ did, that the SSMPA-based arrests of LGBTI individuals have

resulted in reduced or dismissed charges.[2]  Because the record does not compel a contrary

result, the Agency was not required to consider what would likely happen to Adigun were

he to be imprisoned.

Based on the foregoing, we will deny the petition for review.

---

[2] Adigun argues that the Agency failed to give sufficient weight to the fact that in 12 northern states in Nigeria, individuals convicted of engaging in same-sex activities are subject to execution by stoning.  But, according to the 2018 Report, appellate courts consistently overturned stoning sentences.  A.R. at 309, 343.