**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2032
_____

GREGORY WORRELL WRIGHT,
                                    Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A099-814-552)
Immigration Judge: Mirlande Tadal

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on March 21, 2022

Before: KRAUSE, BIBAS, and SCIRICA, <u>Circuit Judges</u>

(Opinion filed: March 30, 2022)

_____

_____

OPINION[*]
_____

PER CURIAM

   Gregory Wright petitions for review of a decision by the Board of Immigration Appeals (BIA). For the reasons below, we will deny the petition for review.

   Wright, a citizen of Jamaica, entered the United States in 1997 and later became a legal permanent resident. After being convicted of robbery in New Jersey and sentenced to twelve years in prison, he was charged in 2016 as removable as a noncitizen convicted of an aggravated felony related to theft, an aggravated felony crime of violence, and a firearm offense. Represented by counsel, Wright applied for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). The IJ sustained the charge that Wright had been convicted of an aggravated felony crime of violence.[1] Because she also determined that Wright's robbery conviction was a particularly serious crime, she concluded that Wright was ineligible for asylum or withholding of removal. The IJ denied his request for deferral of removal under the CAT, having determined that Wright had not established that he would likely be tortured if removed to Jamaica.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] The IJ did not sustain the charge that Wright was removable for having been convicted of a firearm offense and did not address whether Wright was removable as a noncitizen convicted of an aggravated felony theft offense.

Wright filed a pro se appeal to the BIA. The BIA dismissed the appeal and adopted and affirmed the decision of the IJ. It agreed that Wright's robbery conviction qualified as an aggravated felony and a particularly serious crime and that Wright had not met his burden for CAT relief. Wright filed a pro se petition for review.

We have jurisdiction pursuant to 8 U.S.C. § 1252. We first address Wright's argument that his robbery conviction does not qualify as an aggravated felony crime of violence under 8 U.S.C. § 1101(a)(43)(F). A crime of violence is, in relevant part, "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(a). The Government must show by clear and convincing evidence that a noncitizen is removable. 8 U.S.C. § 1229a(c)(3)(A). We exercise de novo review over the BIA's legal conclusions. Singh v. Att'y Gen., 677 F.3d 503, 508 (3d Cir. 2012).

We begin by looking at the statute that Wright was convicted of violating. In New Jersey, one commits robbery when, in the course of committing a theft, one "(1) [i]nflicts bodily injury or uses force upon another; or (2) [t]hreatens another with or purposely puts him in fear of immediate bodily injury; or (3) [c]ommits or threatens immediately to commit any crime of the first or second degree." N.J. Stat. Ann. § 2C:15-1(a). Wright suggests that juries in New Jersey are charged under all three subsections of the robbery statute and that not all of the subsections describe offenses that qualify as crimes of violence. It appears that he is arguing that the robbery statute is not divisible. We, however, have already held that the New Jersey robbery statute is divisible. United States v. McCants, 952 F.3d 416, 427 (3d Cir. 2020). Thus, we apply the modified categorical approach and may consider

3

those documents in the administrative record such as the indictment and judgment of conviction to determine upon which subsection of the robbery statute Wright's conviction was based. See id.[2]

As noted by the BIA, Wright's judgment of conviction reflects that he was convicted of first-degree robbery. A robbery is graded as a crime of the first degree "if in the course of committing the theft the actor attempts to kill anyone, or purposely inflicts or attempts to inflict serious bodily injury, or is armed with, or uses or threatens the immediate use of a deadly weapon." N.J. Stat. Ann. § 2C:15-1(b). In count one of the indictment, Wright was charged as having committed a theft and having used force, inflicted bodily injury, threatened bodily injury, or purposely put the victims in fear of bodily injury while armed with or threatening the immediate use of a deadly weapon. A.R. at 371. Wright was convicted of this count. This is clearly an offense that has the use, attempted use, or threatened use of force as an element. See 18 U.S.C. § 16(a).

Wright appears to assert in his brief that the jury in his criminal case was instructed on all three subsections of § 2C:15-1(a) and that subsection (a)(3)—threatening to commit a crime of the first or second degree while in the course of committing a theft—would not qualify as a crime of violence. Wright did not exhaust this argument in his brief before the BIA. See A.R. at 3 (noting that Wright did not identify any error with the IJ's determination that his conviction constitutes an aggravated felony crime of violence) & 15–29 (Wright's

---

[2] Wright argues that the IJ and BIA did not use the categorical approach because they mentioned the facts of his crime. Those discussions, however, were part of the analysis of whether Wright's conviction qualified as a "particularly serious crime" and not whether it qualified as an aggravated felony crime of violence.

4

brief). Thus, we lack jurisdiction to consider it. See 8 U.S.C. §1252(d)(1) (providing that a court may review final order of removal only if "the alien has exhausted all administrative remedies available to the alien as of right"). Moreover, the documents Wright submits to support this argument are simply excerpts from other cases and do not establish that his jury was instructed on all three subsections.

Wright also asserts in his brief before us that (1) the principal participant in the robbery is still at large; (2) one victim testified that Wright did not rob him or put him in fear of his life; and (3) one victim refused to name Wright as the robber. However, Wright's conviction is final for immigration purposes, see Paredes v. Att'y Gen., 528 F.3d 196, 198-99 (3d Cir. 2008), and cannot be challenged in his immigration proceedings. Moreover, none of these assertions undermines Wright's conviction.

Having determined that Wright is removable, we turn to his challenge to the denial of his request for CAT relief.[3] To be eligible for deferral of removal under the CAT, Wright needed to demonstrate that it is more likely than not that he would be tortured if removed to Jamaica. 8 C.F.R. §§1208.16(c)(2); 1208.17(a). He also needed to show, inter alia, that the torture would be inflicted by or with the acquiescence of a public official. Roye v. Att'y Gen., 693 F.3d 333, 341 (3d Cir. 2012).

---

[3] As an aggravated felon convicted of a "particularly serious crime," Wright was ineligible for cancellation of removal, asylum, withholding of removal, and withholding of removal under the CAT; he could only apply for deferral of removal under the CAT. See 8 U.S.C. §§1158(b)(2)(A)(ii), (B)(i); 8 U.S.C. §1231(b)(3); Bastardo-Vale v. Att'y Gen., 934 F.3d 255, 261 (3d Cir. 2019) (en banc) (recognizing that §1158(b)(2)(B)(i) "automatically designates aggravated felonies as particularly serious crimes"); 8 C.F.R. §1208.16(d).

In evaluating a CAT claim, the agency must first determine whether it is more likely than not that the applicant would be tortured if removed. This question involves both a factual finding of what is likely to happen to the applicant and the legal question of whether it constitutes torture. Quinteros v. Att'y Gen., 945 F.3d 772, 786-87 (3d Cir. 2019). The agency then determines how public officials will respond, including whether public officials will acquiesce in any torture. Id. at 786. We review the agency's factual findings for substantial evidence. Thus, its findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." Nasrallah v. Barr, 140 S. Ct. 1683, 1692 (2020) (quoting 8 U.S.C. § 1252(b)(4)(B)).

Wright has not shown that the record compels a finding that he is entitled to CAT relief. Before the IJ, Wright testified that his father, uncle, and cousins were killed in Jamaica due to his family's political affiliations. Wright asserted that his father was shot by people affiliated with another political party, and a police officer said his father could not be taken to the hospital. Instead, the police officers allegedly shot his father. In 2000, Wright's teenage cousin was shot and killed. Another cousin was later killed in 2008. Wright argued that he would likewise be killed if removed to Jamaica and that the police would not protect him.

Wright's mother testified that she was told that Wright's father was shot by other neighborhood people and then the police picked him up and shot him to death. She said he was shot due to a turf conflict and political conflict. When asked on cross-examination how she knew that the police shot Wright's father, she explained, "[w]ell it was said that he wasn't dead, he got shot in his back while he was running away and then people said that they

6

heard a gunshot when the police move off and then by the time we go to the hospital they said he was dead." A.R. at 250–51. She also stated that Wright's uncle was killed by someone from the next neighborhood because of where he lived. She did not believe there was any political motive to his shooting. The killing of one of Wright's cousins she attributed to a turf war because the killers lived in the same area. The other cousin was allegedly killed by friends that became enemies.

The IJ found that Wright was credible and had corroborated his testimony. She noted, however, the differing reasons that Wright and his mother gave for his father's death as well as the fact that the last of the murders occurred twelve years earlier. She determined that Wright had not shown past torture or a threat of future torture.

The BIA agreed with the IJ that Wright had not shown that it was more likely than not that he would be tortured with the acquiescence of a public official if removed to Jamaica. It noted that Wright's mother provided a different reason for his father's death. It determined that Wright had not demonstrated that he had been tortured in the past and that the high rate of crime in Jamaica did not show a specific risk of future torture as to Wright.

In his brief, Wright argues that the BIA misinterpreted his mother's testimony and assumed that the turf wars were not political. He asserts that his father was killed by a police officer for political reasons but admits that this is hard to prove. However, regardless of the reasons for his father's death over 35 years ago or his relatives' deaths over 12 years ago, Wright has simply not shown that the record compels a finding that he will more likely than not be tortured with the acquiescence of a public official if removed to Jamaica. Nasrallah, 140 S. Ct. at 1692. He has not provided compelling evidence that he would be

7

specifically targeted for torture. <u>See</u> <u>Zubeda v. Ashcroft</u>, 333 F.3d 463, 478 (3d Cir. 2003) (stating that "reports of generalized brutality within a country do not necessarily allow [a noncitizen] to sustain his/her burden under the Convention Against Torture").

For the above reasons, we will deny the petition for review.