NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

AUG 4 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

|  |  |
|---|---|
| ISRAEL LOPEZ,<br><br>        Petitioner,<br><br>  v.<br><br>MERRICK B. GARLAND, Attorney General,<br><br>        Respondent. | No. 21-70628<br><br>Agency No. A091-679-954<br><br>MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 6, 2023
Pasadena, California

Before: KLEINFELD and COLLINS, Circuit Judges.**

Israel Lopez, a citizen of El Salvador, petitions for review of the decision of

the Board of Immigration Appeals ("BIA") upholding the order of the Immigration

Judge ("IJ") denying his applications for withholding of removal and protection

under the Convention Against Torture ("Torture Convention"). We have

jurisdiction under § 242 of the Immigration and Nationality Act, 8 U.S.C. § 1252,

and § 2242(d) of the Foreign Affairs Reform and Restructuring Act, 8 U.S.C.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* This matter is decided unanimously by a quorum of the panel. *See* 28 U.S.C. § 46(d); Ninth Cir. Gen. Order 3.2(h).

§ 1231 note. *See Nasrallah v. Barr*, 140 S. Ct. 1683, 1690–91 (2020). We review the agency's legal conclusions de novo and its factual findings for substantial evidence. *See Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1059 (9th Cir. 2017) (en banc). Under the substantial evidence standard, "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). We deny the petition.

1. Reviewing de novo, we conclude that the agency applied the correct legal standards in assessing whether Lopez faced a clear probability of persecution if he is removed to El Salvador. *See Shrestha v. Holder*, 590 F.3d 1034, 1039 (9th Cir. 2010). The IJ correctly articulated and applied the applicable nexus standard from *Barajas-Romero v. Lynch*, 846 F.3d 351 (9th Cir. 2017). The IJ properly described that standard as requiring only a showing that the protected ground—here, Lopez's asserted membership in several "particular social group[s]," 8 U.S.C. § 1231(b)(3)(A)—is "a reason" for the persecution. *See Barajas-Romero*, 846 F.3d at 359–60. The IJ noted that this is a "less demanding standard than the 'one central reason' standard for asylum." The BIA likewise recited and applied that same "a reason" standard. Although Lopez contends that the agency departed from that standard in its actual assessment of the evidence, we discern no support in the record for that contention. Lopez's disagreement with the agency's weighing of the evidence does not establish that the agency applied the wrong legal standards.

To establish his claim for withholding from removal here, Lopez had to show that it is more likely than not that he would face future persecution "because of" his "membership in a particular social group." 8 U.S.C. § 1231(b)(3)(A); *Barbosa v. Barr*, 926 F.3d 1053, 1059 (9th Cir. 2019). Lopez concedes that he suffered no past persecution before he left El Salvador in 1981, but he contends that he would face future persecution due to his membership in the following three proposed particular social groups: "Salvadoran men who suffer from Major Depressive Disorder with visible symptoms of abnormal behavior"; "Salvadoran men with serious mental illness with visible symptoms"; and "Salvadoran men who exhibit anti-social behavior associated with a mental disorder." The BIA assumed, without deciding, that these proposed particular social groups were legally cognizable and that Lopez was a member of them, but it nonetheless upheld the IJ's denial of relief on the ground that Lopez had failed to demonstrate that any harm he may suffer in El Salvador would be *because of* his membership in those particular social groups. Substantial evidence supports this determination.

The agency permissibly concluded that Lopez had not shown that he was likely to face persecution from staff members of El Salvador's state-run National Psychiatric Hospital ("NPH"). The agency acknowledged the record evidence of serious deficiencies in the NPH and in the treatment of the mentally ill in El Salvador's healthcare system, but it reasonably concluded that, even assuming that

3

Lopez might be placed in the NPH, any resulting mistreatment would not be on account of his membership in his proposed particular social groups. Although Lopez's expert witness, Dr. Nickels, opined that mistreatment at the NPH is in part due to "societal stigma towards persons with mental illnesses," the agency reasonably concluded that it is instead attributable to "a lack of adequate staffing, medication, and funding." Lopez argues that the evidence should have been weighed differently, but we cannot say that the record compels a conclusion contrary to the agency's. *See* 8 U.S.C. § 1252(b)(4)(B).

We likewise conclude that substantial evidence supports the agency's determination that Lopez "does not face a clear probability of persecution by gang members or the police in El Salvador on account of his membership in his proposed particular social groups." The agency acknowledged that the behaviors associated with Lopez's "mental illness symptoms might draw" negative attention from police or gangs, but it was not persuaded that Lopez was thereby likely to be targeted for mistreatment on account of his proposed particular social groups by either gangs or the police. Nothing in the record compels a contrary conclusion.

2. Substantial evidence also supports the agency's denial of relief under the Torture Convention. To qualify for such relief, "an applicant bears the burden of establishing that she [or he] will more likely than not be tortured with the consent or acquiescence of a public official if removed to her [or his] native country."

4

*Xochihua-Jaimes v. Barr*, 962 F.3d 1175, 1183 (9th Cir. 2020). Lopez argues that if returned to El Salvador, he faces a likelihood of torture from NPH staff, the police, and gangs. The agency concluded that torture was not likely to occur from any of these sources, considered individually or in combination. Once again, the agency's assessment of the evidence reflects a reasonable reading of the record that we cannot set aside. *See Hernandez v. Garland*, 52 F.4th 757, 771–72 (9th Cir. 2022) (holding that agency's assessment of evidence concerning the likelihood of torture of mentally ill individuals in Mexico was supported by substantial evidence); *Acevedo Granados v. Garland*, 992 F.3d 755, 765 (9th Cir. 2021) (reaching a similar conclusion in upholding the agency's rejection of a claim, based on similar testimony from Dr. Nickels, concerning the likelihood that mentally ill persons in El Salvador would face torture).

**PETITION DENIED.**