**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1231
_____

VASIL BAJRAKTARI,
                                        Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A240-087-169)
Immigration Judge: Adam Panopoulos
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 12, 2024

Before: KRAUSE, MATEY, and CHUNG, Circuit Judges

(Opinion filed: September 18, 2024)
_____

OPINION[*]
_____

PER CURIAM

        Vasil Bajraktari petitions for review of the BIA's order dismissing his appeal. For

the reasons that follow, we will deny the petition for review.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Bajraktari, a citizen of Albania, entered the United States in 2009 as a nonimmigrant visitor. In 2023, he was charged as removable for overstaying his admission period. Represented by counsel, Bajraktari conceded removability and applied for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). After a hearing, an Immigration Judge (IJ) denied relief. The IJ determined that (1) Bajraktari's asylum application was untimely; (2) he was not eligible for asylum or withholding of removal because there were serious reasons to believe he committed a serious nonpolitical crime (collaboration in the prostitution of a minor in Italy); and (3) he was not entitled to deferral of removal under the CAT. Bajraktari filed a counseled appeal to the Board of Immigration Appeals (BIA). The BIA dismissed the appeal, agreeing with the IJ that Bajraktari was not eligible for asylum or withholding of removal and not entitled to deferral of removal under the CAT. Bajraktari filed a pro se petition for review.

We first address Bajraktari's challenge to the BIA's determination that he was ineligible for asylum or withholding of removal.[1] If there are serious reasons to believe that a noncitizen has committed a serious nonpolitical crime before his arrival in the United States, the noncitizen is not eligible for asylum or withholding of removal. See 8 U.S.C. § 1158(b)(2)(A)(iii) (asylum); 8 U.S.C. § 1231(b)(3)(B)(iii) (withholding). The BIA affirmed the IJ's determination that there were serious reasons to believe that Bajraktari had committed such a crime.

---

[1] We have jurisdiction pursuant to 8 U.S.C. § 1252.

Bajraktari does not dispute the IJ's determination that he was convicted in absentia by an Italian court of, inter alia, collaboration in and gaining the proceeds from the prostitution of a minor. Bajraktari stated in his asylum application that the conviction was "transferred" to Albania. Represented by counsel, Bajraktari challenged the conviction in Albania. An Albanian court recognized the conviction, and Bajraktari appealed. An Albanian appellate court upheld the conviction but reduced the sentence from eight to seven years in prison.

Bajraktari does not argue that his conviction is not a serious nonpolitical crime. Rather, he contends that the conviction is not sufficient because he was convicted in absentia. In support, he cites a case, In re Piraino, 12 I. & N. Dec. 508, 512 (BIA 1967), which involved excludability, not removability, and weaker in-absentia evidence. The BIA in Piraino determined that the Government had not established by clear, unequivocal, and convincing evidence that Piraino was *excludable* at the time of entry for having committed a crime involving moral turpitude. Id. There, the Government submitted an order of *arrest* from another country entered in absentia after the noncitizen had entered the United States. Id. The BIA noted that, under the law at the time, an in-absentia conviction could not be the basis for a finding of excludability or deportability based on a conviction. Id. at 511-12. Thus, it concluded that an in-absentia order of arrest was not enough to carry the Government's high burden. Id. The decision did not at all address removability.

Here, Bajraktari did not contest that the Government had met its burden of establishing that he is removable. Rather, he applied for relief from removal, and, as

discussed below, once the Government showed that the evidence indicated that a ground for mandatory denial of relief may apply, i.e., that Bajraktari had committed a serious nonpolitical crime, the burden was on Bajraktari to prove by a preponderance of evidence that the ground did not apply. The Government had a higher burden of proof in Piraino and submitted weaker evidence. Piraino is distinguishable.

Bajraktari also contends that the burden should not have shifted to him to demonstrate that the reasons were not serious for believing he had committed the offense. Considering the weight of the evidence submitted by the Government, the IJ did not err in shifting the burden to Bajraktari. See 8 C.F.R. § 1240.8(d) (providing that "[i]f the evidence indicates that one or more of the grounds for mandatory denial of the application for relief may apply, the [noncitizen] shall have the burden of proving by a preponderance of the evidence that such grounds do not apply"). Given that both the Italian courts and the Albanian courts have upheld the conviction, the BIA did not err in determining that there are serious reasons to believe that Bajraktari has committed a serious nonpolitical crime.

We turn now to his challenge to the denial of his application for deferral of removal under the CAT.[2] To be eligible for such relief, Bajraktari needed to demonstrate, inter alia, that it is more likely than not that he would be tortured if removed to Albania. See 8 C.F.R. §§ 1208.16(c)(2), 1208.17(a). In evaluating a CAT claim, the agency must first determine whether it is more likely than not that the applicant would be

---

[2] Because we agree that he is not eligible for asylum, we need not address whether Bajraktari's application for asylum was timely filed.

4

tortured if removed. This question involves both a factual finding of what is likely to happen to the applicant and the legal question of whether it constitutes torture. Quinteros v. Att'y Gen., 945 F.3d 772, 786-87 (3d Cir. 2019). We review the agency's factual findings for substantial evidence. Thus, its findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." Nasrallah v. Barr, 590 U.S. 573, 584 (2020) (quoting 8 U.S.C. § 1252(b)(4)(B)).

Bajraktari asserts that a government official named Afrim Qendo (Afrim) will try to harm him if he is removed to Albania due to Bajraktari's ownership of certain properties and his resistance to Afrim's alleged criminal acts. He describes various actions allegedly taken by Afrim over two decades. First, he claims that a 1998 attack on Bajraktari that required hospitalization was ordered by Afrim who was chief of police at the time. Eight years later, in 2006, another man, Gzim Gjeci beat Bajraktari while a police officer held him at gunpoint. Bajraktari states that he later heard a rumor that Gzim was connected to Afrim. In 2008, Afrim, who was then chief inspector, tried to demolish Bajraktari's property. And, in 2012, Afrim, in his position as Director of the Albanian Road Authority, allegedly filed two complaints against Bajraktari for money laundering. At the time of the hearing before the IJ, Afrim was a Prefect for Tirana, Albania.

The IJ concluded that there was no evidence that the 1998 assault was connected to Bajraktari's later issues. The IJ observed that since 2009, no one has threatened him or asked family members about him. His brother co-owns and operates the family's business, and his mother still owns one of the properties at issue. The IJ found that Gzim,

5

the previous owner of the property who assaulted Bajraktari in 2006, was not likely to harm him. He also found that the 2006 assault did not rise to the level of torture, and that Bajraktari could relocate to his hometown. The BIA affirmed the denial of deferral of removal for the reasons stated by the IJ. Bajraktari has not shown that the record compels a finding that anyone in Albania is interested in harming him. He offers no evidence, besides his own speculation, that Afrim was involved in the 1998 and 2006 assaults.[3]

Bajraktari also asserts that his son was hit by a car and argues that Afrim was trying to murder his son and send him a message that he has not forgotten him. He does not state when his son was injured or provide any support for his belief that Afrim was involved. He also claims that another son was arrested by the prime minister of Albania for not standing up and greeting the prime minister and Afrim. These incidents were not mentioned in his brief before the BIA or before the IJ. We may not consider these incidents because we may decide a petition for review based only on the administrative record. See 8 U.S.C. § 1252(b)(4)(A).

For the above reasons, we will deny the petition for review.

---

[3] Before the IJ, Bajraktari did not testify that he believed that Afrim was involved in the 1998 attack. While he did testify that he believed that Afrim paid for him to be assaulted in 2006 because Bajraktari had won a court case against him, he offered no other details or evidence to support that allegation.