NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-2523
_____

QUADRI ADEMOLA BANKOLE,
                                        Petitioner

v.

U.S. ATTORNEY GENERAL
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A219-592-164)
Immigration Judge:  Dennis Ryan
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 5, 2026
Before:  BIBAS, CHUNG, and BOVE, *Circuit Judges*

(Opinion filed:  June 12, 2026)
_____

OPINION*
_____

PER CURIAM

_____
* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Quadri Ademola Bankole petitions for review of a final order of removal issued by the Board of Immigration Appeals (BIA). For the following reasons, we will deny in part and dismiss in part the petition.

Bankole is a native and citizen of Nigeria, who arrived in the United States in April 2017 on a B-2 Visa. In November 2023, he was charged with removability as an alien who overstayed his visa. *See* 8 U.S.C. § 1227(a)(1)(B). Bankole conceded the charge, and the Immigration Judge (IJ) sustained removability. The IJ granted Bankole multiple continuances to allow him to pursue adjustment of status based on his U.S. citizen wife's I-130 Petition for Alien Relative filed with the U.S. Citizenship and Immigration Services (USCIS). At a final hearing in December 2024, the IJ denied Bankole's request for another continuance, and proceeded with a merits hearing on Bankole's application for asylum, withholding of removal, and for relief under the Convention Against Torture (CAT). Bankole claimed to fear persecution or torture by the Nigerian government because of his association with the Oduduwa Nation (aka Yoruba Nation), a secessionist group in western Nigeria.

At the merits hearing, Bankole testified that his father was charged by the Nigerian government with treason because of his activities with the Oduduwa Nation. Bankole described his father's multiple arrests and detention by the Nigerian government. Bankole testified that military personnel came to his home numerous times searching for his father. When the soldiers couldn't find him, they threatened to take Bankole, and one time they threatened to kill him. On another occasion, when the family was not home, the officials "shot up" his house. A.R. at 220. After the soldiers "raided" his house in

2

January 2017 looking for his father, Bankole left for the United States with his mother and brother.  A.R. at 211.  His father used a fake passport to go to Germany, where Bankole believes his father has political asylum.  Bankole stated that he had supported his father by attending "secret rall[ies]" and a meeting or two, where members discussed the separatist movement, but he does not have communication with the separatist movement now.  A.R. at 216.

The IJ denied the asylum application as time-barred, and, alternatively, on the merits, and denied withholding and CAT relief.  The IJ also pretermitted the I-130 application because it had not been approved by USCIS.  On appeal, the BIA adopted and affirmed the IJ's decision.  Bankole filed a timely petition for review.

We have jurisdiction pursuant to 8 U.S.C. § 1252(a).  Where, as here, the BIA has adopted and affirmed the IJ's decision, and also has conducted an independent analysis, we review both the IJ's and the BIA's decisions.  *See S.E.R.L. v. Att'y Gen.*, 894 F.3d 535, 543 (3d Cir. 2018).  We review the Agency's legal determinations de novo and its factual findings for substantial evidence.  *See Herrera-Reyes v. Att'y Gen.*, 952 F.3d 101, 106 (3d Cir. 2020).  Under the substantial-evidence standard, factual findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  *Nasrallah v. Barr*, 590 U.S. 573, 584 (2020) (citation omitted).

In his brief, Bankole first argues that the BIA erred in finding that he had not challenged, in his administrative appeal, the IJ's denial of his motion to continue the proceedings so he could pursue his application for adjustment of status.  However, the record makes clear that Bankole did not raise this issue before the BIA, and, therefore, it

3

did not abuse its discretion in deeming the issue waived. *See Sanchez v. Att'y Gen.*, 147 F.4th 348, 352 (3d Cir. 2025) (noting that review of the BIA's waiver determination is for abuse of discretion). And to the extent that Bankole challenges the IJ's decision to pretermit his I-130 application, he also failed to raise that issue before the BIA. Pursuant to 8 U.S.C. § 1252(d)(1), a petitioner must exhaust all available remedies for each issue raised "in order to preserve [the] right to appellate review of a final order of removal." *Gomez-Gabriel v. Att'y Gen.*, 146 F.4th 327, 330 (3d Cir. 2025) (per curiam) (citation omitted). Where, as here, the Government properly invokes that exhaustion rule, we enforce it. *See Aguilar v. Att'y Gen.*, 107 F.4th 164, 168-69 (3d Cir. 2024).

Next, Bankole argues that he is eligible for asylum. The IJ denied the asylum application as untimely because Bankole failed to "[d]emonstrate[ ] by clear and convincing evidence" that his application was filed within one year of his arrival in the United States, as required under 8 U.S.C. § 1158(a)(2)(B). A.R. at 120-21. As the Government notes, we lack jurisdiction to review that determination where, as here, it does not present a constitutional claim or question of law. *See* 8 U.S.C. § 1158(a)(3); *Tarrawally v. Ashcroft*, 228 F.3d 180, 185-86 (3d Cir. 2003); *see also Sukwanputra v. Gonzales*, 434 F.3d 627, 634 (3d Cir. 2006).

Bankole also challenges the denial of his claim for withholding of removal. The IJ determined that Bankole had not met the standard for asylum, which required him to show past persecution, or a well-founded fear of future persecution, "on account" of his membership in particular social group (PSG). *See* 8 U.S.C. § 1101(a)(42)(A). Contrary to Bankole's argument, the IJ correctly noted that the standard for withholding of

4

removal is higher than that for asylum, and thus that the failure to make the requisite showing for asylum necessitates the denial of a claim for withholding. *See Blanco v. Att'y Gen.*, 967 F.3d 304, 310 (3d Cir. 2020).

Bankole argues that the IJ's finding that he did not have a well-founded fear of persecution was contradicted by his "testimony of repeated act[s] of politically motivated persecution against him." Petitioner's Br. at 6. He also challenges the finding that he had not suffered past persecution, noting "his father's multiple arrest[s] as a result of his prominent role in the Oduduwa Nation, harassment by Nigerian government authorities in response to his affiliation with the Oduduwa Nation and kinship to his father, and threats to his life." *Id.*

The IJ meaningfully considered the evidence in support of Bankole's claims, and substantial evidence supports his findings.[1] In particular, the IJ emphasized that Bankole attended only a few secret meetings of the Oduduwa Nation, and there was no evidence from which government officials could attribute separatist views to Bankole. The IJ noted that Bankole was arrested, but it was unrelated to any political activity. The IJ also

---

[1] Bankole's counsel identified his PSG as "people who are opposed to the existing government and who are engaged in political activity against government authorities." A.R. at 125. The IJ did not err in rejecting the PSG as "amorphous" and "impermissibly broad." Id.; *see S.E.R.L. v. Att'y Gen.*, 894 F.3d 535, 552 (3d Cir. 2018) (noting that the PSG must have "discrete and . . . definable boundaries that are not amorphous, overbroad, diffuse, or subjective, so as to provide a clear standard for determining who is a member of it" (internal quotation marks and citation omitted)). The IJ nevertheless considered the PSG of "immediate relatives of [Bankole's father,] Faheed Babtune Bankole," and determined that Bankole had not shown a sufficient nexus between the harm he may suffer and "the PSG that the Court proffered, that Counsel proffered or even to political opinion." A.R. at 125-26.

noted that each time officials "stormed" Bankole's home, they were looking for his father, and Bankole was neither hurt nor arrested. *See Chavarria v. Gonzalez*, 446 F.3d 508, 518 (3d Cir. 2006) ("limit[ing] the type of threats constituting persecution to only a small category of cases, and only when the threats are so menacing as to cause significant actual suffering or harm" (internal quotation marks and citation omitted)); *cf. Voci v. Gonzales*, 409 F.3d 607, 614 (3d Cir. 2005) (concluding past persecution existed where petitioner "suffered multiple beatings, seven of which he characterized as severe, and at least one of which resulted in a broken knee and an extended hospital stay" and "police attempted to intimidate his family members and threatened their safety if [he] refused to abandon his political activities"). Based on the foregoing, the record does not compel a finding that Bankole suffered past persecution, or has a well-founded fear of future persecution, on account of a protected ground, and therefore the IJ did not err in determining that Bankole could not meet the heightened burden to establish withholding of removal.

Substantial evidence also supports the Agency's conclusion that Bankole is not likely to face torture in Nigeria and, thus, that he is not entitled to CAT relief. *See* 8 C.F.R. § 1208.16(c)(2); *Sevoian v. Ashcroft*, 290 F.3d 166, 174-75 (3d Cir. 2002). Bankole purports to challenge the BIA's "application of the facts to the legal standard" for CAT relief, Petitioner's Br. at 13, but he fails to identify how the Agency erred, and we do not see any error.

In light of the above, we will deny in part and dismiss in part the petition for review.

6